**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

BRILLIANT ALTERNATIVES, INC., :
*et al.*, :
 :
    Plaintiffs, :
 : CIVIL ACTION NO.
v. : 1:09-CV-2348-RWS
 :
FEED MANAGEMENT SYSTEMS, :
INC., *et al*., :
    Defendants. :
 :

## **ORDER**

This case comes before the Court on Plaintiffs Brilliant Alternatives, Inc. and Robert Brill's Motion for Partial Summary [42], Plaintiffs' Motion to Compel Non-Party Cargill, Inc. [62], and Plaintiffs' Motion for Extension of Time to Complete Discovery [68]. After a review of the record, the Court enters the following Order.

## **I. Factual Background**

Robert Brill and Brilliant Alternatives, Inc. ("Brilliant") (collectively, "Plaintiffs"), have filed this action against the Defendants Feed Management Systems, Inc. ("FMS") and Richard Reynertson (collectively, "Defendants").

These parties' relationship began when the Plaintiffs sold all of their then-assets, including BRILL FORMULATION® and BRILL® Toolkit, to the Defendants' predecessor in interest in 1999. SMF, Dkt. No. [42-3] at ¶ 2; Resp. SMF, Dkt. No. [50] at ¶ 2. As a part of this agreement, the Plaintiffs retained the right to distribute the now-FMS products throughout the world, excluding North and South America and Australia. Resp. SMF, Dkt. No. [50] at ¶ 2. However, after a dispute arose in 2006, FMS filed suit against the Plaintiffs ("2006 Litigation"), and FMS ultimately terminated the distribution agreement in 2007. Id.

In January 2008, the Plaintiffs entered into a separate agreement ("Comco-Brilliant Agreement") with Comco Systems, Inc. ("Comco") whereby the Plaintiffs agreed to transfer, assign, and/or license certain new software programs that were used in conjunction with or "improved upon" the FMS-owned BRILL® software. SMF, Dkt. No. [42-3] at ¶ 4; Resp. SMF, Dkt. No. [50] at ¶ 4. The Plaintiffs also agreed that they would work with Comco to, among other things, "promote Brilliant products and services, work with Comco sales staff to coordinate sales efforts, [and] work as a member of the Comco team." Comco-Brilliant Agreement, Dkt. No. [7-2] at art. 3. In return,

2

Comco agreed to "market, promote, sell, and service Brilliant Products and Services," to take over the defense of the 2006 Litigation, to pay Brill a ten-thousand-dollar-a-month independent contractor fee, and pay royalties to the Plaintiffs. SMF, Dkt. No. [42-3] at ¶¶ 5-7; Comco-Brilliant Agreement, Dkt. No. [7-2] at arts. 4-5, 7. No party could assign the rights and obligations of this agreement without the written consent of the other. Comco-Brilliant Agreement, Dkt. No. [7-2] at art. 10.2.

In executing its duties under the Comco-Brilliant Agreement, Comco then negotiated a settlement agreement with FMS to terminate the 2006 Litigation ("Settlement Agreement"). SMF, Dkt. No. [42-3] at ¶ 9; Resp. SMF, Dkt. No. [50] at ¶ 9. Beyond the Settlement Agreement itself, FMS and the Plaintiffs also signed a Memoranda of Understanding ("MOU") and Comco and FMS ultimately entered into a Reseller Agreement, which authorized Comco to sell certain FMS products, including BRILL FORMULATION® . Resp. SMF, Dkt. No. [50] at ¶ 9; Reseller Agreement, Dkt. No. [54-1] at Sch. A.

In July 2008, Comco and FMS additionally signed a Management Agreement ("FMS-Comco Agreement"), whereby FMS agreed to manage Comco's business and to provide work direction to Brill. SMF, Dkt. No. [42-3]

3

at ¶ 12; FMS-Comco Agreement, Dkt. No. [54-1] at s. 2(a). This contract stated that it "shall not constitute an assignment by [Comco], in part or in whole, of the [Brilliant-Comco Agreement] . . . and shall be deemed to be and be limited only to the management arrangement contemplated hereunder." FMS-Comco Agreement, Dkt. No. [54-1] at s. 7(f).

In the course of its management, FMS invited Brill to come to a series of meetings in late August 2008. SMF, Dkt. No. [42-3] at ¶ 25. At these meetings, Brill provided information regarding his "Distribution Network" which he thought would enhance the Defendants' ability to generate revenues on Comco's behalf. Id. at ¶ 26. However, Defendants dispute much about these meetings. Resp. SMF, Dkt. No. [50] at ¶ 26.

Shortly thereafter, in October/November 2008, Comco stopped paying Brill his monthly consultant fee and terminated the Brilliant-Comco Agreement. SMF, Dkt. No. [42-3] at ¶¶ 29-30. Plaintiffs allege that these actions were taken at FMS' request. As a result, Plaintiffs have filed this suit, alleging: 1) tortious interference with contractual relations; 2) tortious interference with business relations; 3) fraud; 4) misappropriation of business opportunities; 5) unjust enrichment; 6) punitive damages; 7) an alternative claim that the Plaintiffs were

4

third-party beneficiaries; 8) injunction; 9) accounting; and 10) attorneys' fees. Cmpl., Dkt. No. [1]. The Defendants answered and filed counterclaims alleging: 1) trademark infringement; 2) unfair competition and false designation of origin; 3) breach of contract; and 4) tortious interference with FMS customers.

Plaintiffs now move for partial summary judgment on many of the claims. Additionally, they seek to compel non-party Cargill, Inc. ("Cargill"), the current owner of FMS, to produce additional discovery responses and seek to extend the period for discovery. The Court will consider each motion in turn.

## II. Discussion

### A. Motion for PartialSummary Judgment

Plaintiffs have moved for summary judgment on their tortious interference with business relations, tortious interference with contractual relations, and unjust enrichment claims. Additionally, Plaintiffs have moved for summary judgement on all of Defendants' counterclaims: 1) trademark infringement; 2) unfair competition and false designation of origin; 3) breach of contract; and 4) tortious interference with FMS customers.

Federal Rule of Civil Procedure 56 requires that summary judgment be

5

granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotations omitted)). Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

The applicable substantive law identifies which facts are material. Id. at 248. A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. Id. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249-50.

AO 72A
(Rev.8/82)

In resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002). But, the court is bound only to draw those inferences which are reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(c), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

1. Tortious Interference with Contractual and Business Relations

In Georgia, tortious interference with contractual relations is a separate and distinct tort from tortious interference with business relations, although the two share three common elements. Britt/Paulk Ins. Agency, Inc. v. Vandroff Ins. Agency, Inc., 952 F. Supp. 1575, 1581 (N.D. Ga. 1996). Specifically, to

AO 72A
(Rev.8/82)

recover under tortious interference with business relations, the plaintiff must prove that the defendant: "1) acted improperly and without privilege; 2) acted purposely and with malice or intent to injure; 3) induced a third party or parties not to enter into or continue a business relationship with the plaintiff; and 4) caused the plaintiff financial injury." Id. To recover under tortious interference with contractual relations, the plaintiff must prove elements one, two, and four of the business relations tort. Additionally, the plaintiff must prove that the defendant "interfered with a third party's then existing contractual rights and relations"–i.e., an underlying contract must have existed. Id. at 1581-82.

However, to recover under either cause of action, the plaintiff must demonstrate that the defendant is an "intermeddler" and a "stranger" to the contract or business relationship. Id. at 1582. Under Georgia law, a defendant is not a stranger as a matter of law when

> 1) the defendant is an essential entity to the purported injured relations; 2) the allegedly injured relations are inextricably a part of or dependent upon the defendant's contractual or business relations; 3) the defendant would benefit economically from the alleged injured relations**;** or 4) both the defendant and the plaintiff are parties to a comprehensive interwoven set of contracts or relations.

Id. at 1584. Importantly, though, whether a defendant has tortiously interfered with either the plaintiff's business relationships or contractual relations is generally reserved for the jury. Id. at 1583.

Here, this Court finds that there are genuine issues of material fact which go to multiple elements of these claims. First, whether Comco was even induced by the Defendants is clearly in issue. Defendants have produced the affidavit of Mr. Neil Reddekopp, the Chief Financial Officer of Comco.[1] In this affidavit, Mr. Reddekopp clearly states that "Comco did not consider any input from FMS on [the] decision [to terminate the Brill-Comco Agreement], and, in

---

[1] Plaintiffs spend approximately four pages in their Reply Brief challenging Mr. Reddekopp's affidavit as violating the parol evidence rule and the Brilliant-Comco Agreement's merger clause. However, Plaintiffs end this discussion by stating that they will file a Motion to Strike to formally challenge this affidavit. Pl.'s Reply, Dkt. No. [58] at 5 ("Plaintiffs are preparing to file a motion to strike the affidavit of Neil Reddekopp."). However, no such motion was filed. Therefore, Defendants have not had an opportunity to respond to these allegations, as they were on notice that they would. Therefore, Plaintiffs, by virtue of their own statements, will be estopped from raising these arguments at this stage of the proceeding since they did not actually file the Motion to Strike. Moreover, it appears that the Plaintiffs' challenges would be unavailing for the paragraphs upon which the Court seeks to rely. These statements discuss interactions that occurred after the Brilliant-Comco Agreement was signed and thus would not be barred by either the merger clause or the parol evidence rule. See Hernandez v. Carnes, 659 S.E.2d 925, 927 n.3 (Ga. Ct. App. 2008) (finding that the parol evidence rule only bars evidence which seeks to "vary the meaning of a written contract through prior or contemporaneous oral agreement," not statements which factually detail the parties' conduct since the agreement was signed).

9

fact, FMS was not consulted on this decision." Aff. Reddekopp, Dkt. No. [52] at ¶ 60.

Moreover, there is a clear fact issue on whether FMS was even a "stranger" to the Brilliant-Comco relationship. Much of Brilliant's derivative software was dependent upon the underlying FMS-owned BRILL® Toolkit to run and there were multiple contracts between the parties between 1999 and 2008, when the relationships broke down for the final time. In sum, this Court is unable to determine as a matter of law that the Defendants tortiously interfered with the Plaintiffs/Comco contractual or business relationship.

### 2. Unjust Enrichment

Next, Plaintiffs move for summary judgment on their unjust enrichment count. "For unjust enrichment to apply in either law or equity [in Georgia], the party conferring the labor and things of value must act with the expectation that the other will be responsible for the cost." Hollifield v. Monte Vista Biblical Gardens, Inc., 553 S.E.2d 662, 670 (Ga. Ct. App. 2001) (citing Engram v. Engram, 463 S.E.2d 12, 12 (Ga. 1995)). Plaintiffs allege that the Defendants "surreptitiously elicited information from Plaintiffs related to [Plaintiffs' international] Distribution Network" and did not pay for that benefit. Pl.'s Br.,

10

Dkt. No. [42-1] at 19-20. Further, Plaintiffs state that they provided this information to the Defendants because they thought that "the information was being sought solely in conjunction with the Comco-Brilliant Agreement." Id. at 19.

However, under Plaintiffs' own understanding of the interaction, there is a genuine issue of material fact. Plaintiffs argue that they provided this information under their Brilliant-Comco agreement obligations–obligations for which the Plaintiffs were paid by virtue of the consulting fee and royalties from Comco. See Brilliant-Comco Agreement, Dkt. No. [1-1] at arts. VII-VIII. Further, FMS was managing that relationship for Comco at the time of the exchange–i.e., it was Comco's agent. Thus, there is a genuine issue of fact regarding whether the Defendants were unjustly enriched.

### 3. FMS' Counts I and II

Plaintiffs additionally seek summary judgment on Defendants' counterclaims which allege that the Plaintiffs improperly used Defendants' trademarks. However, there is a genuine issue of fact on these claims as well. In February 2009, Plaintiffs' counsel admitted that the Plaintiffs had "committed some technical violations of the 'Settlement Agreement' or the

11

'MOU'"–i.e., violations which would have occurred post-settlement and would not be subject to Defendants' previous liability release. Letter from Daniel I. MacIntyre, Attny. for Robert J. Brill and Brilliant Alternatives, Inc., to Richard G. Morgan (Feb. 5, 2009), Dkt. No. [54-2] at 51; see Settlement Agreement, Dkt. No. [54-1] at s. 3.1 (releasing the Plaintiffs from any suits which arose "out of or in any way related to any facts <u>in existence on or before the date of execution</u> of this Agreement") (emphasis added). Therefore, summary judgment is not appropriate on these claims.

### 4. Breach of Contract and Tortious Interference with FMS' Customers

Plaintiffs claim that they could not have breached their contract with FMS or tortiously interfered with their customers because Plaintiffs were authorized to sell the BRILL® Toolkit pursuant to Section 3.2.3 of the 2008 Settlement Agreement. However, genuine issues of material fact exist on these claims, as well. Section 3.2.3 allows the Plaintiffs to distribute any product on Comco's behalf, to sell products which qualify as "Derivative Products" under the Addendum to Reseller Agreement, and to sell the specific products which are listed in Section 3.2.3(d) or (e). First, the BRILL® Toolkit is not listed in either Section 3.2.3(d) or (e) and would not qualify as a "Derivative Product"

12

under the Reseller Addendum. Second, after Comco terminated its agreement with the Plaintiffs, the Plaintiffs were not acting as Comco's agents. Therefore, Plaintiffs did not have a contractual basis for the alleged breach.

Further, Plaintiffs' argument that Section 3.2.3(d) implicitly incorporated the BRILL® Toolkit because those enumerated programs could not run without it is not well taken. Plaintiffs signed the MOU which made clear that the Plaintiffs would "not contest any claim or assertion by FMS that it owns all rights, titles, and interest in . . . BRILL® Toolkit applications" and that Plaintiffs have "no right to use any of the FMS Software for any purpose whatsoever, except as otherwise permitted under the Reseller Agreement and the Reseller Agreement Addendum." MOU, Dkt. No. [7-3] at ¶¶ 1, 6. All of these agreements also differentiate between "Derivative Products" and the BRILL® Toolkit. This distinction would be meaningless if, by virtue of being able to sell the derivative product, the Plaintiffs could also sell BRILL® Toolkit. Further, it would have made Comco's agreement to license the BRILL® products from FMS unnecessary. These provisions demonstrate that FMS retained its rights in BRILL® Toolkit and that Plaintiffs would only be able to license the Section 3.2.3(d) and (e) enumerated software to anyone who

13

already had a legal BRILL® Toolkit license.  Therefore, this Court is not able to find for the Plaintiffs as a matter of law.  For all the foregoing reasons, Plaintiffs' Motion for Partial Summary Judgment [42] is **DENIED**.

### B. Motion to Compel Non-Party Cargill

Plaintiffs move to compel non-party Cargill to produce all remaining responsive documents to their subpoena duces tecum, stating that Cargill has waived all of its objections. According to Plaintiffs, because Cargill was served with the subpoena on June 25, 2010, its objections were due fourteen days later pursuant to Rule 45(c)(2)(B), or July 9, 2010.  Here, Cargill filed its objections on the day the response was due–August 2, 2010.

While Plaintiffs are correct that Cargill's untimeliness does violate the rule on its face, courts in this Circuit have found that "in unusual circumstances and for good cause, the failure to act timely may not bar consideration of objections." Am. Standard, Inc. v. Humphrey, 2007 WL 1812506, * 4 (M.D. Fla. June 22, 2007).

> Such unusual circumstances have been found where (1) the subpoena is overbroad on its face and exceeded the bounds of fair discovery, (2) the subpoenaed witness is a non-party acting in good faith, and (3) counsel for the witness and counsel for the subpoenaing party were in contact concerning the witness'

14

compliance prior to the time the witness challenged the legal basis for the subpoena.

Id. (internal quotations omitted).

Here, the Plaintiffs sought much of the same information already requested from the Defendants and defined "FMS" and "Cargill" in their subpoena to include their respective attorneys. Including attorneys in the "Cargill" definition facially swept in privileged communications and was thus overbroad, apart from the duplicative requests. Further, Cargill is a non-party who actively communicated with the Plaintiffs regarding its discovery. As such, this Court finds that Cargill's objections have not been waived and Plaintiffs' Motion to Compel [62] is **DENIED**.

Additionally, in their Reply Brief, Plaintiffs challenge the sufficiency of Cargill's privilege log. This Court **ORDERS** Cargill to produce a privilege log in accordance with the Federal Rules of Civil Procedure and the Local Rules. If Cargill contends it has already done so, it should confer with Plaintiffs so that Plaintiffs could then move for more specificity.

### C. Motion to Extend Discovery

Plaintiffs additionally move to extend the discovery period. Defendants do not oppose such an extension. As such, Plaintiffs' Motion to Extend

15

Discovery through and including June 14, 2011 [68] is **GRANTED**.

## III. Conclusion

Plaintiffs' Motion for Partial Summary [42] and Plaintiffs' Motion to Compel Non-Party Cargill, Inc. [62] are **DENIED**. However, this Court **ORDERS** Cargill to produce a privilege log in accordance with the Federal Rules of Civil Procedure and the Local Rules. If Cargill contends it has already done so, it should confer with Plaintiffs so that Plaintiffs could then move for more specificity. Lastly, Plaintiffs' Motion for Extension of Time to Complete Discovery [68] is **GRANTED**. Discovery is extended through and including June 14, 2011.

**SO ORDERED** this  22nd  day of February, 2011.

_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)